**STATE, Plaintiff-Appellee, v MOORE, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20663. Decided June 16th, 1947.

Frank T. Cullitan, and John J. Mahon, both of Cleveland, for plaintiff-appellee.

Clayborne George, and A. L. Kearns, both of Cleveland, for defendant-appellant.

## OPINION

By SKEEL, J.

This cause comes to this court on an appeal on questions of law from a judgment of the Common Pleas Court. The defendant had been indicted on a charge of murder in the second degree. The facts upon which the charge is founded were, briefly, as follows:

The defendant was the proprietor of a dry cleaning establishment located at 9906 Hough Avenue, Cleveland, Ohio; one Herman Hall was employed by defendant as a route man. He had, according to defendant, become short in his accounts and as a result, defendant some time prior to June 9, 1946, had refused to let Hall take any goods out of the shop until he settled his account. One of the defendant's customers who was served by Hall, claimed to have delivered a package of laundry to Hall which had not been returned. The customer brought an action against Moore for the conversion of the laundry delivered to Hall. After Moore was served with summons in the case he went to the home of Hall to talk over the pending case and the claimed shortage in Hall's account. Hall was not home when Moore first got there and so he told Hall's mother what he wanted. He was just leaving Hall's home when Hall drove up in a car and seeing Moore just leaving the house accused him of worrying his mother about his (Hall's) private affairs. An argument ensued in which Hall offered to fight Moore. He used a great deal of profanity and a fight resulted in which Moore was knocked to the ground. Moore then returned to his automobile and got a gun which he had in the glove compartment and then returned and struck Hall twice with the gun. Hall then knocked Moore's hand in which he held the gun up in the air and a shot was fired. From this point on until the fatal shots were fired, the evidence is in hopeless conflict.

The State introduced evidence that defendant knocked the deceased down and then fired two shots into his body while defendant contends that a struggle ensued and that in the struggle the gun was discharged. He also claims to have acted in self-defense. The jury returned a verdict finding the defendant guilty of manslaughter.

The defendant contends:

1. That the verdict is not supported by sufficient evidence.

2. That the verdict was rendered under passion and prejudice.

3. That the court erred in the admission of evidence.

4. That there is error in the charge of the court.

An examination of the record discloses that defendant's claims as to numbers 1, 2 and 4 are not well taken and the same are therefore overruled.

The claim of error in the admission of evidence has to do with certain evidence offered by the state over the objection of the defendant and received by the court on the subject of similar offenses. The witness, Garrett A. Morgan testified that he was at one time the defendant's landlord and that he wanted to put him out of the premises. In attempting to accomplish such purpose Morgan went to O. P. A. and secured certain papers and left them in defendant's mail box. One of these papers was a notice to vacate. Morgan then testified in part as follows:

"A. First he knocked at the door and I invited him in and he said to me, he says, 'Are you' shall I use the words he used?

Q. Yes.

A. 'God damn you, you put these trash papers into my mail box, don't you ever do it again, if you do, God damn you I will kill you.' He stood there in my kitchen with his hand in his pocket, his hand on the revolver, and he said, 'I want you to understand that, if you ever put ——— if you ever come up into my house or put any more of this damn trash in my box, God damn you, I'll kill you,' and he tore them up and threw them in my face.

Q. Did you see the revolver?

A. Yes sir, I did.

\* \* \* \* \* \*

Q. How long after that did you see him?

A. Well it was possibly about, oh, I will say, three to four, maybe three or four weeks.

Q. Where did you see him then?

A. He came back to the place, to my place, to my residence.

Q. Yes.

A. He told me that he would not be responsible any more, for any more rents, because there was just a little whore that he brought from Alabama in an automobile, who had three

living husbands, and of course in the meantime he had left his wife—this woman, in the house of his mother.

Mr. George: I object.

Q. Just tell us what he said.

A. Well, he said he was not no more responsible for any more rent, or anything of that kind, so I said 'if that is the case then stay away from the place.'

\* \* \* \* \* \*

Mr. George: I want to object to all the testimony with reference to what Morgan said that Mr. Moore said to him with reference to some woman.

The Court: That last statement with reference to some woman may go out and be disregarded by the jury, the other prior testimony of the witness with regard to the threat with a gun may remain in the record and be considered by the jury as a similar act under §13444-19 GC.

Mr. George: Exception.

The Court: All the testimony of this witness in the other regard may show counsel's objection the objections overruled and exception. The last part of his statement the jury may disregard entirely.

\* \* \* \* \* \*

Q. And the next occasion was when he came to your house. How long after that time was that?

A. Possibly two weeks, something like that.

Q. What transpired, what did he say at that time and what did you say?

A. He said, 'the next time I hear of you giving this woman money I'm going to kill you and I will do it right now if you say anything,' with the gun· in his hand in my house, the second time.

Q. He had the gun at that time?

A. Yes sir.

\* \* \* \* \* \*

Q. Just what he said and what you said, not what somebody· else said, just what was said by him and what you said.

A. Well, he said that if I gave his wife any money or ever said anything to her again he was going to kill me.

Q. You told us that. Was anything else said or did that end the conversation?

A. At that time?

Q. Yes.

A. I think so.

Q. Now did you see him on any other occasion after that?

A. Yes sir.

Q. How long after?

A. Possibly, oh it might have been a couple of nights after that, something like that.

Q. Where did you see him then?

A. He was on his front porch and I was standing in my factory door. He called me downstairs. I had told him not to come back there any more.

Q. Yes.

A. And he said to me, 'well, God damn you, I am coming back and I will be ready and I want you to be ready.' So I went on to work and about six o'clock that night maybe seven o'clock, I was upstairs working and I heard somebody calling me. Now, his porch is possibly as close to me as from here to that flag there, to my office door, only on different lots and I went downstairs and Moore stood on the porch with his big black gun. 'God damn you, I'm here now, what are you going to do about it? Now just out with it and I will stop you.' There was nothing else for me to do but close the door and go back upstairs. That's all.

Q. Did you have any contact with him after that?

A. No."

This testimony taken at its face value cannot be said to even suggest a similar offense. The most that can be said for it is that it would tend to show he was a man of violent temper and quarrelsome disposition and of bad repute in his social relations. It is proper under some circumstances to establish a defendant's bad reputation for peace and quiet, but that cannot be done by showing specific instances of disturbing conduct. All that can be shown where such evidence is properly admissible is his general reputation for peace and quiet. The attempt to inject into this trial evidence of the defendant's relations with others in no way connected with the facts in this case, was prejudicial to the defendant's rights and constituted reversible error.

For the foregoing reasons the judgment of the trial court is reversed and the cause remanded for further proceedings according to law.

HURD, PJ, and MORGAN, J, concur.